IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JOHANN BRITO,
JOSE REYES,
ALBERT ESPINAL,

     Defendants.

CRIMINAL CASE NO.
1:11-cr-00060-ODE-RGV

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are motions to sever, [Docs. 157, 158 & 159],[1] filed by

defendants Albert Espinal ("Espinal"), Jose Reyes ("Reyes") and Johann Brito

("Brito"), collectively referred to as "defendants," and motions to dismiss the

indictment, [Doc. 160], to preclude the use of proffered statements, [Doc. 133], to

prohibit the use of evidence discovered as a result of statements made during plea

negotiations, [Doc. 148], and to suppress evidence, [Docs. 161 & 162], filed by Brito,

as well as a motion *in limine* regarding the non-testimonial nature of call records,

[Doc. 141], filed by the government.  For the following reasons, it is hereby

---

[1] The listed document and page numbers in citations to the record refer to the
document and page numbers shown on the Adobe file reader linked to the Court's
electronic filing database, CM/ECF.

**RECOMMENDED** that the government's motion *in limine*, [Doc. 141], be **GRANTED**, defendants' motions to sever, [Docs. 157, 158 & 159], and Brito's motions to dismiss the indictment, [Doc. 160, and to suppress evidence obtained from the execution of a search warrant, [Doc. 162], be **DENIED**, and that Brito's motions to preclude the use of proffered statements, [Doc. 133], to prohibit the use of evidence discovered as a result of statements made during plea negotiations, [Doc. 148], and to suppress evidence seized after a traffic stop, [Doc. 161], be **GRANTED IN PART** and **DENIED IN PART**.

## I. PROCEDURAL BACKGROUND

Defendants are charged with conspiring to take and obtain and actually taking drugs and proceeds of drug trafficking by means of actual and threatened force, violence, and intimidation from the presence of individuals engaged in drug trafficking, an activity affecting interstate commerce, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). [Doc. 110]. Defendants are also charged with attempting to possess and possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2, and with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. [Id. at 10-12].[2]

_____

[2] In addition, Espinal is also charged separately in Count Six with knowingly obstructing, delaying, and affecting commerce and the movement of articles and

## II.  DISCUSSION

**A.    Brito's Motion *in Limine* to Preclude the Use of Proffered Statements and Motion to Prohibit the Use of Evidence Discovered as a Result of Statements Made During Plea Negotiations, [Docs. 133 & 148]**

Brito has filed a motion *in limine* to preclude the use of his proffered statements, [Doc. 133], and a related motion to prohibit the use of evidence discovered as a result of statements he made to the government during plea negotiations, [Doc. 148].  These motions pertain to interviews of Brito by the government that occurred on April 26, 2011, and June 9, 2011.  See [Doc. 133 at 2; Doc. 142 at 2; Doc. 148 at 2].  Brito asserts that these interviews were part of plea negotiations with the government, and therefore, the statements he made during the interviews are inadmissible at his trial under Federal Rule of Evidence 410 ("Rule 410") and Federal Rule of Criminal Procedure 11(f) ("Rule 11(f)").[3]  Brito further

_____

commodities in such commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2, in Count Seven with knowingly attempting to possess with the intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and 18 U.S.C. § 2, and in Count Eight with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. See [Doc. 110 at 8-10].

[3] Brito initially argued that these interviews were covered by the terms of a proffer letter, see generally [Doc. 133], but during a conference with the Court on February 3, 2012, see [Doc. 167], Brito's counsel acknowledged that the proffer letter was never signed by Brito and his former counsel, and Brito conceded that the terms of the letter did not apply to the interviews, [id.].  Nevertheless, Brito maintains that the interviews were part of plea negotiations with the government.

contends that the government is precluded from making derivative use of the interviews, and any evidence that is fruit of the interviews is inadmissible as well.[4] See [Doc. 148 at 4; Doc. 170 at 6].

The government disputes that the interviews of Brito on April 26, 2011, and June 9, 2011, were in the course of plea discussions. See [Doc. 173]. However, the government has agreed to treat the statements Brito made during these interviews as if they are protected by Rule 11(f) and Rule 410, and the government has represented that it will not seek to admit any statements made by Brito during these interviews.[5] See [id. at 5]. The government does dispute Brito's contention that it is precluded from making derivative use of the statements he made during these interviews. [Id. at 6-7].

"Federal Rule of Criminal Procedure 11 provides that the admissibility of plea discussions and related statements is governed by Federal Rule of Evidence 410." United States v. Davis, No. 10–14097, 2012 WL 118444, at *1 (11th Cir. Jan. 17, 2012)

---

[4] Brito asserts that the government has the burden of proving that the evidence it proposes to use against him at trial is derived from a legitimate source wholly independent of the statements he made during plea negotiations and that a Kastigar hearing is necessary for the government to prove the independent source of its evidence. See Kastigar v. United States, 406 U.S. 441 (1972); [Doc. 148 at 3-4].

[5] The government also acknowledges that it is prohibited from using the statements for impeachment purposes. [Doc. 173 at 5]; see United States v. Mezzanatto, 513 U.S. 196, 200 n.2 (1995).

(per curiam) (unpublished) (citation omitted). "Rule 410 states that any statement made during the course of guilty plea proceedings or plea discussions with the prosecution that do not result in an ultimate plea are inadmissible against the defendant in criminal proceedings." Id.; see also United States v. Fernandez Martinez, 317 F. App'x 929, 937 (11th Cir. 2009) (per curiam) (unpublished). To advance Rule 410's purpose, which is the "promotion of disposition of criminal cases by compromise," "the Rule protects a defendant's plea-offer statements even during negotiations that occur without a written protection agreement; it prevents the government from directly using those statements against him at trial." United States v. Rasco, 262 F.R.D. 682, 686 (S.D. Ga. 2009) (emphasis, citations, and internal marks omitted).

The Court need not resolve the dispute as to whether the interviews of Brito on April 26, 2011, and June 9, 2011, were in the course of plea discussions since the government has agreed to treat the statements Brito made during these interviews as if they are protected by Rule 11(f) and Rule 410. See [Doc. 173 at 5]. Thus, Brito's motions are due to be granted in part on the basis of the government's agreement that the statements he made on April 26, 2011, and June 9, 2011, are protected to the extent provided by Rule 11(f) and Rule 410. However, contrary to Brito's contention, the protection afforded by these rules does not extend to the fruits of his statements.

Indeed, "while Rule 410 and its substantively identical counterpart Fed.R.Crim.P. 11(f), require the suppression of 'statements' made in the course of plea discussions, they do not speak to, much less bar, evidence the government *derives* from such statements." Rasco, 262 F.R.D. at 687 (emphasis in original). In fact, "[e]very federal court to have considered the issue has similarly found that [Rule 410] and [Rule 11(f)] do not require suppression of *derivative* evidence." Id. (first alteration in original) (citations and internal marks omitted); see also United States v. Cusack, 827 F.2d 696, 697-98 (11th Cir. 1987) (per curiam); United States v. Rutkowski, 814 F.2d 594, 599 (11th Cir. 1987) (per curiam). Thus, the government is not precluded from offering evidence derived from the statements Brito made during the interviews.[6] For the foregoing reasons, it is **RECOMMENDED** that Brito's motion *in limine* to preclude the use of his proffered statements, [Doc. 133], and motion to prohibit the use of evidence discovered as a result of statements he made to the government during plea negotiations, [Doc. 148], be **GRANTED IN PART** and **DENIED IN PART.**

**B.    Defendants' Motions to Sever, [Docs. 157, 158 & 159]**

Defendants each seek a separate trial from their co-defendants. [Docs. 157,

---

[6] Because Rule 11(f)'s exclusionary rule does not cover derivative evidence, a Kastigar hearing is not required. See United States v. Reaves, No. 1:08–cr–00025–MP–AK, 2009 WL 1423907, at *3 n.1 (N.D. Fla. May 15, 2009).

158 & 159]. Espinal and Reyes seek a separate trial primarily on the basis that statements made by Brito implicate them and require severance. [Doc. 157 at 2-5; Doc. 158 at 2-3]. In addition, Reyes and Brito argue that severance is warranted because a joint trial in this case would be unfair due to the danger of guilt transference or the "spill over" effect. [Doc. 158 at 1-2; Doc. 159 at 2].

"When multiple defendants are indicted, joined offenses must be reviewed initially under the standard set forth under Fed.R.Crim.P. 8(b)." United States v. Jones, No. CR 109-073, 2009 WL 2920894, at *1 (S.D. Ga. Sept. 11, 2009) (citations omitted). "Once Rule 8(b) has been satisfied by the allegations in the indictment, severance is governed entirely by Fed.R.Crim.P. 14, which recognizes that even proper joinder under Rule 8(b) may prejudice a defendant or the government." Id. at *2 (citing United States v. Lane, 474 U.S. 438, 447 (1986)); see also United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002). After consideration of the pleadings, the Court finds that joinder of the defendants in the indictment was proper under Rule 8, and severance is not merited under Rule 14 on the present record.

**1.** *Joinder is proper under Rule 8*

"Joinder of parties and defendants under Rule 8 is designed to promote judicial economy and efficiency." United States v. Weaver, 905 F.2d 1466, 1476 (11th Cir. 1990). "Rule 8 'is broadly construed in favor of the initial joinder.'" Id. (citation

omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."); Hersh, 297 F.3d at 1241; United States v. Touchet, No. 3:07-cr-90-J-33HTS, 2008 WL 2025322, at *7 (M.D. Fla. May 9, 2008); United States v. Cameron, No. 06-20753-CR, 2007 WL 1696022, at *3 (S.D. Fla. June 12, 2007), adopted at *1 (quoting United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000)). Indeed, Rule 8(b) "permits the joinder of [d]efendants in the same indictment if they are alleged to have participated in the same act or transaction, and the general rule is that [d]efendants indicted together should be tried together, especially in conspiracy cases." United States v. Chavez, 584 F.3d 1354, 1359-60 (11th Cir. 2009) (citations and internal marks omitted).

Defendants have not specifically argued that joinder under Rule 8(b) is improper in this case, and the Court finds that the defendants were properly joined because the offenses charged in the indictment involve the same series of acts or transactions pursuant to a common scheme, they share common defendants alleged to have jointly committed the acts or transactions, and proof of the offenses will include testimony from some of the same witnesses. See United States v. Brooks, 270 F. App'x 847, 849 (11th Cir. 2008) (per curiam) (unpublished) (finding district court properly denied defendants' motions to sever where they were jointly indicted

for the same conspiracy); Jones, 2009 WL 2920894, at *1 (joinder of defendants proper where defendants alleged to have participated in the same series of acts or transactions); United States v. Bujduveanu, No. 08-20612-CR, 2008 WL 4558696, at *1 (S.D. Fla. Oct. 10, 2008) (finding joinder under Rule 8(b) proper where defendants were jointly charged in the indictment of a single conspiracy); see also United States v. Gravatt, 280 F.3d 1189, 1191 (8th Cir. 2002).

## 2. *Severance is not warranted under Rule 14*

Although joinder is appropriate under Rule 8, the Court still has discretion under Rule 14(a) of the Federal Rules of Criminal Procedure to sever the defendants and order separate trials if it appears that consolidation of the charges would prejudice the defendants. Fed. R. Crim. P. 14(a); United States v. Kopituk, 690 F.2d 1289, 1314-15 (11th Cir. 1982). "In deciding a motion for severance, the Court must balance the right of a defendant to a fair trial against the public's interest in efficient and economic administration of justice." United States v. Denmark, No. 205CR71FTM33DNF, 2005 WL 2755987, at *2 (M.D. Fla. Oct. 25, 2005) (citation and internal marks omitted). "More specifically, the Eleventh Circuit has interpreted Rule 14 to require a [d]efendant seeking severance to demonstrate specific and compelling prejudice arising from a joint trial." Id. (citing United States v. Leavitt, 878 F.2d 1329, 1340 (11th Cir. 1989)). Defendants have not done so here.

Reyes and Brito assert that severance is warranted due to the possibility of guilt transference resulting from evidence that may be introduced at trial against one or more co-defendants that is unrelated to their own charges. [Doc. 158 at 1-2; Doc. 159 at 2]. While a defendant "can show compelling prejudice by demonstrating that the jury would not be able to separate the evidence relevant to each count[,] . . . instructions to the jury which require the jury to consider the evidence separately as to each . . . count have been held to be adequate safeguards against prejudice due to joinder." <u>Denmark</u>, 2005 WL 2755987, at *2-3 (<u>citing</u> <u>Kopituk</u>, 690 F.2d at 1320). Furthermore, "severance is not required if some evidence is admissible against some defendants and not others and a defendant is not entitled to severance because the proof is greater against a co-defendant." <u>United States v. Jones</u>, No. 1:06-CR-140, 2007 WL 712420, at *4 (E.D. Tenn. Mar. 6, 2007) (citations and internal marks omitted); <u>see also</u> <u>United States v. Locascio</u>, 6 F.3d 924, 947 (2d Cir. 1993) (citations omitted) ("[J]oint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."). Therefore, this claim is without merit.

Espinal and Reyes argue that their Sixth Amendment right to cross-examine adverse witnesses would be violated if they are tried with their co-defendant Brito because he has met with the government on several occasions and made statements

that expressly implicate their involvement in the alleged criminal activity charged in the superseding indictment. [Doc. 157 at 3; Doc. 158 at 2]. "In *Bruton v. United States*, the Supreme Court held that a defendant's Confrontation Clause rights might be violated if, in a joint trial, a codefendant's statement or confession is admitted into evidence against the co-defendant, but the codefendant does not take the stand to permit the defendant's cross-examination." Jones, 2007 WL 712420, at *3 (citing Bruton, 391 U.S. 123 (1968)). Severance, therefore, "might be appropriate if the Government intends to introduce into evidence a codefendant . . . statement, if such statement expressly implicates [d]efendant and if such co-defendant does not take the stand to permit cross-examination." Id.

As discussed already, the government has represented that it will not seek to admit any statements made by Brito during the interviews conducted on April 26, 2011, and June 9, 2011, see [Doc. 173 at 5], and Reyes and Espinal have not identified any other specific statements that may be used at trial or explained how Brito's statements may implicate them in the conspiracy. Thus, Reyes and Espinal "[have] not carried [their] burden of demonstrating a problem under Bruton," and "severance on this basis is not supported by the existing record." United States v. Wilson, No. 10-60102-CR, 2010 WL 2609429, at *8 (S.D. Fla. June 5, 2010), adopted by 2010 WL 2612341, at *1 (S.D. Fla. June 25, 2010); see also United States v. Bane, No.

11

8:09-cr-352-T-33MAP, 2010 WL 882913, at *3 (M.D. Fla. Mar. 5, 2010). The defendants have failed to establish compelling prejudice such that the Court should exercise its discretion and grant a severance. Accordingly, it is hereby **RECOMMENDED** that defendants' motions to sever, [Docs. 157, 158 & 159], be **DENIED** at this time.[7]

## C.     Brito's Motion to Dismiss the Indictment, [Doc. 160]

Brito moves to dismiss Counts One, Nine, Ten, Eleven, and Twelve of the second superseding indictment, [Doc. 160], which charge him with violations of the Hobbs Act, among other offenses, arguing that these counts are unconstitutional as applied in this case because the statute exceeds the authority granted to Congress under the Commerce Clause and the Necessary and Proper Clause of the United States Constitution and because it violates the Tenth Amendment. [Id.].

### 1.     *The Commerce and Necessary and Proper Clauses*

The United States Constitution empowers Congress to "regulate commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has ruled that the Commerce Clause grants Congress the power to regulate commerce in three distinct areas. First, Congress may regulate the use of the channels of

_____

[7] Espinal alternatively moves the Court to preclude the government from using Brito's statements at trial. [Doc. 157 at 3-5]. However, since the government has represented that it will not offer Brito's statements at trial, Espinal's alternative motion is moot.

12

interstate commerce.  Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 247-48 (1964).  Second, Congress may regulate the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.  Shreveport Rate Cases, 234 U.S. 342, 351 (1914).  Third, Congress may regulate those activities having a substantial effect on interstate commerce.  Maryland v. Wirtz, 392 U.S. 183, 196 (1968), overruled on other grounds by Nat'l League of Cities v. Usery, 426 U.S. 833, 855 (1976).

Brito contends that the government "cannot bootstrap [his] Hobbs Act indictment to the Supreme Court's interpretation of the Controlled Substances Act . . . to establish a substantial effect on interstate commerce."  [Doc. 160 at 12].  Specifically, Brito argues that the government must prove that the Hobbs Act offenses "had some effect on interstate commerce, not simply that the general activity, taken in toto, has such an effect."  [Id. at 13].  Brito contends that "[t]he purpose of this requirement is to avoid transforming every robbery and extortion, which are quintessential state crimes, into federal offenses."  [Id.].

Several courts have addressed the arguments advanced by Brito and rejected them.  See United States v. Sease, 659 F.3d 519, 526 (6th Cir. 2011); United States v. Livingston, No. 11–1168, 2011 WL 4448744, at *7 (3d Cir. Sept. 27, 2011) (unpublished); United States v. Walker, 657 F.3d 160, 182-83 (3d Cir. 2011); United

States v. Marrero, 299 F.3d 653, 654-55 (7th Cir. 2002). Indeed, "the Hobbs Act's jurisdictional predicate still requires only a minimal effect on commerce," United States v. Williams, 342 F.3d 350, 354 (4th Cir. 2003) (citations omitted), and "[b]ecause drug dealing is an inherently economic enterprise that affects interstate commerce, robbing a drug dealer is the kind of act which satisfies the 'affecting commerce' element of the Hobbs Act," United States v. Fields, No. 03-3441-SAC, 2004 WL 3037960, at *4 (D. Kan. Dec. 2, 2004) (citations and internal marks omitted); see also United States v. Hoffman, Criminal No. 01-169-02, 2009 WL 3540770, at *11 (E.D. Pa. Oct. 30, 2009) (citation omitted) ("Interference with a drug dealer's business has been held to violate the Hobbs Act because of the interstate character of drug dealing."); United States v. Hodge, No. CR-07-0262-PHX-FJM, 2008 WL 3843824, at *1 (D. Ariz. Aug. 14, 2008) (citation omitted) ("[R]obbery of an interstate business typically satisfies the [Hobbs Act's] jurisdictional element."). The Court finds these decisions persuasive and therefore rejects Brito's arguments as being without merit.

## 2. *Tenth Amendment*

Brito also argues that the charges in the superseding indictment as applied to him violate the Tenth Amendment because "the suppression of a crime is traditionally a police power left to the states." [Doc. 160 at 14]. Brito further contends that the superseding indictment "violates the Tenth Amendment because

the intrastate criminal conduct alleged therein, robbery and extortion of drug dealers, are wholly consumed by the police power of the State of Georgia." [Id.]. These arguments, however, are without merit.

"With respect to the Tenth Amendment, [the Eleventh Circuit has] held that Congress does not violate the Tenth Amendment when it enacts legislation through constitutionally permissible exercise of its Commerce Clause power." United States v. Edwards, No. 11–11035, 2011 WL 5171661, at *3 (11th Cir. Nov. 2, 2011) (per curiam) (unpublished) (citation omitted). The Hobbs Act is clearly within the power of Congress and does not infringe the Tenth Amendment. Carbo v. United States, 314 F.2d 718, 733 (9th Cir. 1963). In fact, "[r]ather than regulate the internal functions of the states, the Hobbs Act regulates the activities of individuals" and it "does not displace the states' freedom to prosecute robberies or extortions." United States v. Jarrett, 705 F.2d 198, 203 (7th Cir. 1983) (emphasis, footnote, and citation omitted). That is, "the application of the Hobbs Act to the facts alleged in the indictment is a valid exercise of Congress' authority under the Commerce Clause to regulate interstate commerce."[8] United States v. Hooks, No. 05-20329 B, 2005 WL

---

[8] In support of his argument, Brito cites Bond v. United States, 131 S. Ct. 2355 (2011). See [Doc. 160 at 14]. In Bond, the Supreme Court found that an individual convicted of a federal offense had standing to assert that Congress exceeded its power under the Tenth Amendment in enacting a criminal statute. 131 S. Ct. at 2361-67. The Supreme Court, however, did not reach the merits of the defendant's argument that, as applied to her, the federal statute at issue impinged on the

3370549, at *11 (W.D. Tenn. Dec. 12, 2005). In short, "[t]he Hobbs Act presents no unconstitutional intrusion upon the sovereignty of the states and, thus, is a constitutional exercise of the commerce power." Jarrett, 705 F.2d at 203; see also United States v. Bolton, No. 94–10038–01, 1994 WL 721498, at *5 (D. Kan. Dec. 12, 1994) (citing United States v. Ziegler, 19 F.3d 486, 489 (10th Cir. 1994)). Accordingly, the undersigned **RECOMMENDS** that Brito's motion to dismiss, [Doc. 160], be **DENIED**.

## D.    Brito's Motions to Suppress, [Docs. 161 & 162]

Brito moves to suppress any evidence seized and statements obtained as a result of an alleged unlawful traffic stop on August 29, 2008, which resulted in his subsequent detention and the search of his vehicle. [Doc. 161]. Brito also moves to suppress evidence seized pursuant to a search warrant issued for and executed at the residence located at 181 Thornbush Trace in Gwinnett County, Georgia (the "Thornbush residence") on August 29, 2008. [Doc. 162].

---

sovereign authority of the state to regulate her wholly local conduct. Id. at 2366-67. Therefore, "[a]t most, for purposes of this case, *Bond* determined that an individual plaintiff has standing to raise a Tenth Amendment claim. *Bond* says nothing about [the Hobbs Act], and it simply does not reach this case." United States v. Donaldson, Criminal Action File No. 4:10–CR–47–01–HLM, 2011 WL 3918217, at *3 (N.D. Ga. Sept. 6, 2011).

1. *August 29, 2008, Traffic Stop*

With respect to Brito's motion to suppress based on August 29, 2008, traffic stop, [Doc. 161], the government has represented that it does not intend to offer any evidence or statements obtained as a result of the stop and arrest, but that it may seek to introduce identity-related evidence, including any photographs of Brito taken that day and testimony from law enforcement officers who saw Brito on the day in question and recognized him. [Doc. 169 at 2-3]. To the extent the government seeks to introduce evidence solely for identification purposes, "identity-related evidence is not suppressible when offered in a criminal prosecution only to prove who the defendant is." United States v. Vasquez-Garcia, 344 F. App'x 591, 592 (11th Cir. 2009) (per curiam) (unpublished) (citing United States v. Farias-Gonzalez, 556 F.3d 1181, 1182, 1189 (11th Cir. 2009)); see also United States v. Aguila-Perez, 344 F. App'x 521, 523 (11th Cir. 2009) (per curiam) (unpublished); United States v. Diaz-Hernandez, No. 11–14014–CR, 2011 WL 1770455, at *7-8 (S.D. Fla. Apr. 15, 2011), adopted by 2011 WL 1765225, at *1 (S.D. Fla. May 9, 2011); United States v. Slaughter, No. 4:10–CR–24–01–HLM, 2011 WL 1337401, at *8-9 (N.D. Ga. Apr. 6, 2011). Accordingly, it is **RECOMMENDED** that Brito's motion to suppress

evidence and statements with regard to the August 29, 2008, traffic stop, [Doc. 161],

be **GRANTED IN PART** and **DENIED IN PART**.[9]

**2.**   *August 29, 2008, Thornbush Residence Search Warrant*

Brito moves to suppress evidence seized during the execution of a search

warrant at the Thornbush residence on August 29, 2008, contending that there was

no probable cause to support issuing the warrant.  See [Doc. 162].  The government

opposes Brito's motion, asserting that "[e]ven a cursory review of the affidavit at

issue shows that the issuing court properly found that probable cause to issue the

warrant existed."  [Doc. 169 at 5].  The Court agrees.

The Eleventh Circuit has explained the Court's review of the sufficiency of a

search warrant as follows:

> When called upon by law enforcement officials to determine the
> legitimacy of search warrants and their supporting affidavits, issuing
> magistrates and reviewing courts alike must strike a delicate balance
> between constitutional guarantees against excessive intrusions into
> areas of individual freedom and the Government's need to access and
> to secure relevant evidence in criminal prosecutions.  In particular,
> issuing magistrates are given the unenviable task of making "firing
> line" decisions that attempt to encourage availment of the warrant
> process while simultaneously striving to protect citizens from
> unwarranted governmental interference.   In recognition of the
> difficulty inherent in discharging this responsibility, reviewing courts
> lend substantial deference to an issuing magistrate's probable cause
> determinations.

[9] Specifically, to the extent Brito's motion seeks to suppress identity-related
evidence, it is due to be denied.

United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994).  Thus, "[i]n reviewing the issuance of the search warrant, the undersigned must determine only that the magistrate had a 'substantial basis' for concluding that probable cause existed to uphold the warrant."  United States v. Lebowitz, 647 F. Supp. 2d 1336, 1344 (N.D. Ga. 2009), adopted at 1342 (citations omitted).

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested."  United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (citing Zurcher v. Stanford Daily News, 436 U.S. 547, 558 (1978)).  "[P]robable cause deals 'with probabilities [which are] . . . the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  Illinois v. Gates, 462 U.S. 213, 241 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)).  "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner."  Miller, 24 F.3d at 1361 (citation omitted).  Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations."  Id. (citation omitted); see also United States v. Acosta, Criminal Case No.

1:09–CR–184–JEC, 2011 WL 2401829, at *46 (N.D. Ga. June 13, 2011), adopted at *1. Furthermore, "the fact than an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (citations omitted); see also Adams v. Williams, 407 U.S. 143, 149 (1972) (citation omitted).

"Courts have uniformly rejected defense arguments that further investigation should have been conducted to either corroborate or to negate the information in the affidavit or else the search warrant lacks probable cause." Lebowitz, 647 F. Supp. 2d at 1347-48 (citing United States v. Shields, 458 F.3d 269, 280 (3rd Cir. 2006); United States v. Gourde, 440 F.3d 1065, 1072-73 (9th Cir. 2006) (en banc); United States v. Dale, 991 F.2d 819, 844 (D.C. Cir. 1993) (per curiam)). "Thus, the Court must evaluate probable cause based on what information was actually presented to the magistrate, not based on what information could have been presented after further investigation, but was not." United States v. Adigun, Criminal Case No. 1:10–cr–00202–RWS–RGV, 2011 WL 2194253, at *13 (N.D. Ga. May 4, 2011), adopted by 2011 WL 2198308, at *1 (N.D. Ga. June 3, 2011).

Contrary to Brito's contention, the affidavit presented by Investigator S.H. Kannigiser ("Investigator Kannigiser"), to the Magistrate in Gwinnett County, Georgia, alleged sufficient facts to establish probable cause to search the Thornbush

20

residence. See [Doc. 169-1]. Specifically, Investigator Kannigiser recited that investigators with the Gwinnett County Drug Task Force, including Investigator Kannigiser, had conducted an interview with a confidential source, Jose Rolon-Cosme ("Rolon-Cosme"),[10] who advised them that the Thornbush residence contained methamphetamine. [Id. at 3]. During his meeting with Investigator Kannigiser, Rolon-Cosme relayed the same information he had provided to Deputy Jordan, including a detailed description of the Thornbush residence as a large two-story residence located just before a cul-de-sac and having a pool and a surveillance system wired to the residence with a camera located over the center of the garage in order to view the exterior of the house. [Id.]. Rolon-Cosme also provided details regarding the four occupants of the Thornbush residence and explained that they were four Dominican males that were part of a "robbing crew." [Id.]. Rolon-Cosme explained that he was introduced to these individuals through his ex-girlfriend who was related to one of the males. [Id.]. He further relayed that he had gone to the Thornbush residence two weeks prior and observed approximately nine pounds of

---

[10] On August 26, 2008, Rolon-Cosme was arrested and charged with trafficking cocaine. [Doc. 169-1 at 3]. He had first contacted Gwinnett County Sherriff Deputy Jordan ("Deputy Jordan") on August 18, 2008, regarding narcotic activity and the possibility of him working for Deputy Jordan for monetary gain. [Id.].

methamphetamine in the basement and that the occupants were "'making' methamphetamine in the basement and were re-wrapping kilos of cocaine." [Id.].

Investigator Kannigiser also reported that on the day after he met with Rolon-Cosme, he went to the Thornbush residence and verified that the description Rolon-Cosme had provided matched the residence. [Id.]. Later that day, Investigator Kannigiser received a complaint from the Gwinnett County Intelligence Unit, stating that an anonymous tipster had called and complained that there were four heavily armed males living at the Thornbush residence that were involved in drugs, kidnappings, and stolen cars, and that they had two vehicles, a white 2006 Acura and a silver Volkswagon Passat. [Id.]. Investigator Kannigiser confirmed that both vehicles were in fact located at the Thornbush residence. [Id.].[11]

Based on these facts contained in the affidavit, the Magistrate reasonably concluded that there was probable cause to believe that evidence of a crime would

_____

[11] Investigator Kannigiser also conducted some background research on the Thornbush residence and discovered that the power had been turned off on July 23, 2008, but that after the power company discovered that the residence was still using power, it went back out on August 8, 2011, and punched the meter from the house so that power was no longer available. [Doc. 169-1 at 3]. However, Investigator Kannigiser noticed that the Thornbush residence still had power so he contacted a "Mr. Huggins" with the Lawrenceville Meter service who, after sending a technician to the Thornbush residence to investigate, concluded that there must be a stolen meter in the house in order for the house to still have power, which confirmed Investigator Kannigiser's belief that the individuals living in the Thornbush residence as described by Rolon-Cosme and the anonymous tipster were likely the same residents. [Id.].

be found inside the Thornbush residence. Despite Brito's challenge to the veracity of any statements made by Rolon-Cosme, <u>see</u> [Doc. 162 at 7], "at the probable cause stage, a judge is not concerned with concepts of beyond a reasonable doubt, preponderance of the evidence, or even a prima facie case, but rather whether considering the affidavit in a common-sense and practical manner, there is a fair probability that evidence of a crime may be found at the location to be searched." <u>United States v. Nakouzi</u>, No. 3:05CR154(MRK), 2005 WL 3211208, at *10 (D. Conn. Nov. 30, 2005) (citation omitted). Investigator Kannigiser corroborated Rolon-Cosme's statements, which included details and apparent first-hand knowledge, by his own surveillance and research as well as with the information provided by the anonymous tipster.[12] Thus, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."[13] <u>United States v. Martin</u>, 297 F.3d 1308, 1314 (11th Cir. 2002) (alteration

---

[12] The government notes that since Rolon-Cosme was in custody at the time of the anonymous tipster's complaint, "the tipster and informant could not be the same person." [Doc. 169 at 6 n.1].

[13] Additionally, although Brito argues that the information from the metering company regarding the power at the Thornbush residence is inadmissible since it was procured by a private citizen at the direction of law enforcement, <u>see</u> [Doc. 162 at 4], even if the Court disregards that portion of the affidavit, "there remains sufficient content in the warrant affidavit to support a finding of probable cause," <u>United States v. Kapordelis</u>, 569 F.3d 1291, 1309 (11th Cir. 2009). Thus, evidence obtained as a result of the execution of the search warrant at the Thornbush residence is not due to be suppressed.

in original) (citation and internal marks omitted).  Therefore, Brito's contention that Investigator Kannigiser's affidavit did not establish probable cause fails.  See United States v. Young, 229 F. Supp. 2d 1325, 1329-30 (M.D. Ala. 2002) (rejecting defendant's argument regarding lack of probable cause where search warrant affidavit included information from a an anonymous tipster regarding the sale of cocaine from a hotel room, which was corroborated by a confidential source).  Taking all of the facts and circumstances in the affidavit into account, a reasonable, common-sense interpretation of the facts laid out in the application for the search warrant leads to the conclusion that evidence of a crime might very well be found inside of the Thornbush residence.

Alternatively, even if the search warrant were found to be invalid, suppression of the evidence seized from the Thornbush residence would not be warranted because the officers reasonably relied in good faith on the warrant.  See United States v. Leon, 468 U.S. 897, 922 (1984).  Under Leon, "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate." United States v. Gamory, Criminal File No. 1:08-CR-153-TWT, 2009 WL 855948, at *23 (N.D. Ga. Mar. 30, 2009), adopted at *1 (citations and internal marks omitted);

see also United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003). There are four exceptions to the Leon good-faith exception doctrine, none of which apply here:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

Martin, 297 F.3d at 1313 (citation and internal marks omitted). Investigator Kannigiser is not alleged to have misstated any facts or shown reckless disregard for the truth. An impartial magistrate reviewed the affidavit supplied by Investigator Kannigiser, and Brito has not argued that he abandoned his judicial role in signing this warrant. Moreover, as discussed *supra*, the affidavit sets forth sufficient probable cause, and in any case, the affidavit is not "so lacking . . . as to render official belief in its existence entirely unreasonable." Id. Finally, the warrant is facially valid in that it describes in detail the things to be seized, the location for the search, and it is signed by the Magistrate. See [Doc. 169-1]. Officers executing the warrant would therefore have been justified in believing in its validity, and evidence seized during its execution would not be subject to suppression. Massachusetts v.

<u>Sheppard</u>, 468 U.S. 981, 981-82 (1984).  Accordingly, it is **RECOMMENDED** that Brito's motion to suppress evidence arising from the search of the Thornbush residence, [Doc. 169], be **DENIED**.

**E.** **Government's Motion** *in Limine*, **[Doc. 141]**

The government has filed a motion *in limine* to introduce certain telephone call and cell site records by relying upon the business record certification from the telephone provider as it did in the case of <u>United States v. Green</u>, 396 F. App'x 573 (11th Cir. 2010) (per curiam) (unpublished).  In <u>Green</u>, the Eleventh Circuit affirmed the admission of cell phone records and cell tower information based on a business record certification without a live witness where there was an expert witness who testified as to the meaning of the documents.  <u>Id.</u> at 574.  The government intends to follow the same process it used in the <u>Green</u> case here, and since the Eleventh Circuit has affirmed that procedure, in the absence of any opposition to the government's motion in this case, it is **RECOMMENDED** that the government's motion *in limine*, [Doc. 141], be **GRANTED**.

### III.  CONCLUSION

For the foregoing reasons and cited authority, it is hereby **RECOMMENDED** that the government's motion *in limine*, [Doc. 141], be **GRANTED**, defendants' motions to sever, [Docs. 157, 158 & 159], and Brito's motions to dismiss the

indictment, [Doc. 160], and to suppress evidence obtained from the execution of a search warrant, [Doc. 162], be **DENIED**, and that Brito's motions to preclude the use of proffered statements, [Doc. 133], to prohibit the use of evidence discovered as a result of statements made during plea negotiations, [Doc. 148], and to suppress evidence seized after a traffic stop, [Doc. 161], be **GRANTED IN PART** and **DENIED IN PART**.[14]

 **IT IS SO RECOMMENDED**, this 9th day of February, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[14] Espinal has also filed a motion to allow participation in voir dire, [Doc. 156], and this motion has been deferred to the District Judge to be considered at trial, <u>see</u> [Doc. 166].